IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY J. FELLOWS,** | : | CIVIL ACTION NO. 1:22-CV-1900 |
| Petitioner | : | (Judge Conner) |
| v. | : | |
| **STEPHEN SPAULDING,** | : | |
| Respondent | : | |

## MEMORANDUM

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2241. Petitioner, Timothy J. Fellows, challenges a disciplinary sanction imposed by the United States Bureau of Prisons ("BOP") during his incarceration in Schuylkill Federal Correctional Institution ("FCI-Schuylkill"). We will deny the petition with prejudice.

### I. Factual Background & Procedural History

Fellows is currently serving a 348-month term of imprisonment imposed by the United States District Court for the Northern District of Georgia for travel with attempt to engage in illicit sexual conduct. (Doc. 10-1 at 3). He is currently incarcerated in Lewisburg United States Penitentiary ("USP-Lewisburg"), but was incarcerated in FCI-Schuylkill at all times relevant to this case.

On February 5, 2021 at 5:54 p.m., a correctional officer at FCI-Schuylkill ordered Fellows to provide a urine sample. (Id. at 7). Fellows replied that he could not provide a sample at the moment. (Id.) The officer offered him an 8-ounce cup of water, which Fellows refused. (Id.) The officer instructed Fellows that he had

two hours to provide a sample. (Id.) The officer returned to the cell at 7:54 p.m. and told Fellows that this was his last chance to provide a sample. (Id.) According to the officer's account of the incident, Fellows attempted to provide a urine sample but was unable to do so. (Id.) Fellows provided a differing account, stating that he urinated in the provided cup, but did not provide a full sample. (See id. at 8, 14).

The officer charged Fellows with refusing a drug test, and the charge was referred to a Disciplinary Hearing Officer ("DHO"). (Id. at 13). The DHO conducted a hearing on February 18, 2021. (Id.) Fellows requested representation during the hearing, and Dr. E. Mennig was appointed as his staff representative. (Id.) Fellows maintained his innocence, testifying that he urinated in the cup and that although the cup was not full, "there was an inch in there at least." (Id.) Fellows stated that he had not done drugs since he was in his 20s and that he was stressed during the drug test because he was not accustomed to people watching him urinate. (Id.) He additionally stated that he was willing to do a blood test in lieu of a urine test. (Id.)

Fellows additionally called as witnesses Dr. E. Mace Leibson, a doctor in the prison, and an inmate named Swift who witnessed the incident. Mace Leibson testified that Fellows did not have any medical conditions and was not on any medications that would prevent him from providing a urine sample. (Id. at 14). Swift testified that Fellows "peed a little bit in the cup." (Id.)

The DHO found Fellows guilty, giving greater weight to the testimony of the reporting correctional officer and Mace Leibson than Fellows's testimony. (Id. at 15-16). The DHO acknowledged the testimony from Fellows and Swift that Fellows

urinated in the cup, but found that this testimony corroborated a finding that Fellows did not provide a sufficient amount of urine to conduct a drug test. (Id.) The DHO sanctioned him to 41 days loss of good conduct time, 30 days of disciplinary confinement, 6 months without commissary or visitation privileges, and a monetary fine of $400. (Id. at 16).

Fellows challenged the disciplinary sanction through an administrative remedy appeal pursuant to the BOP's administrative remedy program on April 5, 2021. (Doc. 10 at 6; Doc. 10-2 at 3). The appeal was rejected as illegible, and Fellows accordingly refiled on June 14, 2021. (Doc. 10 at 6; Doc. 10-2 at 3). The June 14, 2021 appeal was rejected as untimely, with instructions to Fellows to refile with a staff memorandum explaining the untimeliness. (Doc. 10 at 6; Doc. 10-2 at 3). Fellows filed another appeal on July 21, 2021, which was rejected on the ground that Fellows had not adequately explained the delay in filing. (Doc. 10 at 6; Doc. 10-2 at 4). Fellows then filed an appeal to the BOP's central office on September 27, 2021, which was rejected because Fellows had not properly filed a regional appeal before appealing to the central office. (Doc. 10 at 6; Doc. 10-2 at 4). He filed another appeal on December 8, 2021, which was rejected for his failure to address the issues in his previous filings. (Doc. 10 at 6; Doc. 10-2 at 5).

Fellows filed the instant case through a November 21, 2022 letter, which the court received and docketed on November 30, 2022. (Doc. 1 at 1). Because the letter indicated that his habeas corpus petition was enclosed but it did not appear that any petition was enclosed, the Clerk of Court sent Fellows a letter on December 1, 2022 directing Fellows to file his petition. (Doc. 4). Fellows filed his

3

petition on December 5, 2022, and the court received and docketed it on December 8, 2022. (Doc. 5 at 9).

Fellows seeks a writ of habeas corpus compelling the BOP to restore his good conduct time and vacate the imposed fine. He asserts three claims in support of his request for habeas corpus relief. First, he argues the BOP violated his due process rights when it required him to file a staff memorandum with his appeal of the DHO's decision when he no longer had access to staff members who could provide such a memorandum. (Id. at 6). Second, he argues he is actually innocent of the charge of refusing a drug test given that he urinated in the cup as directed. (Id. at 7). Third, he argues the imposed sanction of 41 days lost good conduct time violates his due process rights. (Id.) Fellows additionally argues in his supporting brief that medication he was taking decreased his urinary flow, making it more difficult to provide a complete urine sample. (Doc. 6 at 11).

Respondent responded to the petition on January 9, 2023. (Doc. 10). Respondent argues the petition should be dismissed for failure to exhaust administrative remedies or alternatively denied on its merits. (Id.) Fellows filed a reply brief on January 24, 2023, arguing, *inter alia*, that exhaustion should be excused because the administrative remedy process was unavailable to him due to the actions of BOP staff. (Doc. 11). The petition is ripe for review.

**III.   Discussion**

Although respondent argues petitioner failed to exhaust administrative remedies, we will exercise our discretion to decide this case on the merits without deciding the issue of exhaustion. See Guerrero v. Recktenwald, 542 F. App'x 161,

4

163 (3d Cir. 2013) (nonprecedential)[1](noting that courts may decide merits of Section 2241 habeas corpus petition without deciding whether petitioner exhausted administrative remedies).

Federal prisoners serving a sentence of imprisonment of more than one year have a constitutionally protected liberty interest in good conduct time. Denny v. Schultz, 708 F.3d 140, 143 (3d Cir. 2013). To protect this interest, prisoners must be afforded procedural due process protections when they are accused of misconduct that may result in the loss of good conduct time, including: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges against them; (3) an opportunity to call witnesses and present documentary evidence when it is consistent with institutional safety and correctional goals to do so; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974).

When reviewing the sufficiency of the evidence in a prison disciplinary proceeding, the court must determine whether there is "any evidence in the record that could support the conclusion" reached by the hearing examiner. Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision, the

---

[1] The court acknowledges that nonprecedential decisions are not binding upon federal district courts. Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

court must reject any evidentiary challenges by the petitioner. Hill, 472 U.S. at 457. This standard is minimal and does not require examination of the entire record, an independent analysis of the credibility of the witnesses, or even a weighing of the evidence. Thompson v. Owens, 899 F.2d 500, 501-02 (3d Cir. 1989).

Fellows first argues that the BOP violated his due process rights when it required him to file a staff memorandum with his administrative appeal when he no longer had access to staff that could provide such a memorandum. (Doc. 5 at 6). This argument is without merit. Prisoners do not have a due process right to a grievance process. See, e.g., Glenn v. DelBalso, 599 F. App'x 457, 459 (3d Cir. 2015). Actions by prison officials that allegedly interfere with a prisoner's ability to complete a prison grievance process accordingly do not amount to violations of the prisoner's due process rights. Id.

Fellows next argues that he is actually innocent of the charge of refusing a drug test because he urinated in the cup as directed. (Doc. 5 at 7). This argument is not supported by the text of the relevant BOP regulations and policies. The BOP regulation governing urine testing states that an inmate "is presumed to be unwilling" to provide a urine sample "if the inmate fails to provide a urine sample within the allotted time period." 28 C.F.R. § 55031(a). BOP policy in turn defines a "urine sample" as "approximately a full specimen bottle," or about two ounces of liquid. BOP Program Statement 6060.08 at 4, 10, available at https://www.bop.gov/policy/progstat/6060_008.pdf (last visited Apr. 20, 2023). Here, the DHO concluded that Fellows failed to provide sufficient urine to be considered a urine sample. This decision was supported by some evidence, including the correctional officer's

6

testimony, Fellows's own acknowledgement that the provided cup was not full after he urinated, and Swift's testimony that Fellows "peed a little bit in the cup." (See Doc. 10-1 at 14).  Thus, because BOP policy recognizes that an inmate may be charged and convicted with refusing a drug test for failing to provide a sufficient urine sample, and the DHO reached a decision supported by some evidence that Fellows failed to provide a sufficient urine sample, we will deny Fellows's second habeas corpus argument.

We will also deny relief to the extent Fellows argues the DHO erred by failing to consider the effect of his medication on his urinary flow.  (See Doc. 6 at 11).  Mace Leibson's testimony that Fellows was not taking any medications that would prevent him from providing a urine sample provided some evidence for the DHO to reject this argument.

Fellows's third and final argument is that the imposed sanction of 41 days lost good conduct time violated his due process rights.  (Doc. 5 at 7).  Although Fellows frames this as a Fifth Amendment due process argument, we liberally construe it to argue that the punishment he received is excessive under the Eighth Amendment.[2]

Fellows was convicted of refusing to provide a urine sample, which is classified as a "greatest severity level" disciplinary offense pursuant to 28 C.F.R. § 541.3.  Available sanctions for a greatest severity level offense include, *inter alia*,

---

[2] We will deny the claim to the extent it is grounded in the Fifth Amendment because, as noted above, Fellows has failed to establish a violation of his Fifth Amendment right to due process.

forfeiture or withholding of up to 100% non-vested good conduct time, termination or disallowance of extra good conduct time, and disallowance of good conduct time available for a year. (Id.) The disallowance of good conduct time available for a year is ordinarily limited to between 50% and 75% of the available time, or 27-41 days. (Id.) Fellows's sanction of 41 days disallowed good conduct time therefore complies with the sanctions available under Section 541.3.

Moreover, prison disciplinary sanctions may be deemed excessive under the Eighth Amendment only if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995) (nonprecedential)); accord Banks v. Thompson, No. 1:21-CV-777, 2022 WL 108611, at *4 (M.D. Pa. Jan. 11, 2022) (Conner, J.). Loss of 41 days of good conduct time is not an atypical or significant hardship on Fellows: BOP inmates are frequently sanctioned with similar forfeitures of good conduct time for refusing to provide a urine sample. See, e.g., Void v. Warden Fort Dix FCI, 345 F. App'x 818 (3d Cir. 2009) (upholding denial of habeas corpus petition where petitioner was sanctioned with 40 days of disallowed good conduct time); Morales v. Strada, No. 1:12-Cv-1113, 2012 WL 6055582, at *1, 4 (M.D. Pa. Dec. 6, 2012) (denying habeas corpus petition where petitioner was sanctioned with 40 days of disallowed good conduct time); Johnson v. Williamson, No. 1:10-CV-1771, 2010 WL 4362454, at *1, 6 (M.D. Pa. Oct. 27, 2010) (same).

Finally, although Fellows has not argued that the DHO hearing violated the due process standards enumerated in Wolff, 418 U.S. 563-67, we note that the

8

hearing complied with those standards. Fellows was given advance notice of the charge against him, the opportunity to call witnesses and present evidence, assistance from a staff representative, and a written decision by the DHO. (See Doc. 10-1 at 13-17). There is also no basis in the record to question the DHO's impartiality.

## IV. Conclusion

We will deny the petition (Doc. 5) for writ of habeas corpus with prejudice. An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   April 28, 2023